IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TCOS ENTERPRISES, INC., | : | No. 10-7130 |
| Defendant. | : | |

<u>MEMORANDUM</u>

Schiller, J.                                                                                                           January 13, 2012

On December 6, 2008, the Flat Rock Saloon in Philadelphia ordered a pay-per-view boxing match and displayed it to bar patrons on six television sets. J & J Sports Productions, Inc. ("J & J"), which holds the commercial distribution rights to the fight, sued the owner of the bar, TCOS Enterprises, Inc. ("TCOS"), alleging violations of federal statutes prohibiting the unauthorized reception of cable and radio transmissions and a state-law conversion claim. Currently before the Court are J & J's amended motion for summary judgment and TCOS's cross-motion for summary judgment. For the following reasons, J & J's motion will be granted and TCOS's cross-motion will be granted in part and denied in part.

I.   BACKGROUND

The Flat Rock Saloon is a bar located at 4301 Main Street in the Manayunk neighborhood of Philadelphia. (Am. Compl. ¶ 8.) J & J holds the exclusive nationwide commercial distribution rights to *"The Dream Match": Oscar De La Hoya v. Manny Pacquiao* (the "Fight"), which was broadcast on December 6, 2008. (Pl.'s Am. Mot. for Partial Summ. J. Attach. 6 [Gagliardi Aff.] ¶ 3.) The Flat Rock Saloon ordered the Fight from its cable provider, Comcast, through its commercial

cable account. (Def.'s Cross Mot. for Summ. J. & Opp'n to Pl.'s Mot. for Partial Summ. J. [Def.'s Resp. & Cross-Mot. for Summ. J.] Ex. B. [Talvacchia Aff.] ¶ 2.) Comcast's commercial terms of service provide in relevant part:

> Customer hereby acknowledges and agrees that Comcast does not have the absolute right to distribute pay-per-view video programming (including programming such as sporting events) . . . to commercial establishments. Therefore, Customer agrees that it shall not exhibit nor assist in the exhibition of any such programming unless explicitly authorized to do so, in advance and in writing, by Comcast and the applicable program or event distributor.

(Pl.'s Am. Mot. for Partial Summ. J. Attach. 3 [Comcast Business Services Customer Terms and Conditions] Art. 21.1.) The Flat Rock Saloon did not receive written permission from J & J before showing the Fight. (Gagliardi Aff. ¶ 7.) The commercial fee to broadcast the Fight for an establishment the size of the Flat Rock Saloon was $2,200, but the bar paid Comcast only the residential fee of $54.99. (*Id.* ¶ 8; Talvacchia Aff. ¶ 6.)

In an effort to detect and prosecute piracy, J & J hires auditors to visit commercial establishments suspected of exhibiting J & J's programming without authorization. (Gagliardi Aff. ¶¶ 5-6.) On one such visit, a private investigator observed the Flat Rock Saloon showing the Fight on six television sets. (Pl.'s Am. Mot. for Partial Summ. J. Attach. 7 [Russeck Aff.].) J & J filed this action on December 3, 2010, alleging violations of 47 U.S.C. § 553 and 47 U.S.C. § 605 as well as a state-law conversion claim.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party

bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Spence v. ESAB Group, Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

**III.   DISCUSSION**

    **A.    47 U.S.C. § 553**

J & J seeks summary judgment on its claim under 47 U.S.C. § 553, which provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). The statute permits damages as low as $100 for innocent violators and as high as $50,000 for willful commercial violators. *Id.*

§ 553(c)(3).

Relying on *J & J Productions, Inc. v. Schmalz*, 745 F. Supp. 2d 844 (S.D. Ohio 2010), TCOS argues that it did not violate Section 553 because it ordered the Fight through a commercial account with Comcast and thus was "specifically authorized" to receive the transmission "by a cable operator." (Def.'s Resp. & Cross-Mot. for Summ. J. at 6-7.) In *Schmalz*, the court held that a bar was not liable under Section 553 because it ordered a fight through its commercial cable account and had no reason to know that the cable operator lacked authority to distribute the fight. *Schmalz*, 745 F. Supp. 2d at 851. J & J contends that "*Schmalz* is an anomaly that contradicts the holdings of most other cases that have addressed liability under 47 U.S.C. §§ 605 and/or 553." (Pl.'s Reply Br. in Supp. of Pl.'s Am. Mot. for Partial Summ. J. at 2.) The Court need not reach this question here, however, as the Flat Rock Saloon was not "specifically authorized" to show the Fight even under the holding of *Schmalz*. As the *Schmalz* court noted, "It was [the cable operator's] responsibility under the terms of its licensing agreement to make Defendants aware that it was not authorized to sell such rights to Defendants and, if possible, to direct Defendants to the entity which did possess those rights." *Schmalz*, 745 F. Supp. 2d at 851. Here, Comcast explicitly informed the Flat Rock Saloon through its terms of service that it did not "have the absolute right to distribute pay-per-view video programming (including programming such as sporting events) . . . to commercial establishments." (Comcast Business Services Customer Terms and Conditions Art. 21.1.) The terms of service also required the Flat Rock Saloon to agree "not exhibit nor assist in the exhibition of any such programming unless explicitly authorized to do so, in advance and in writing, by Comcast and the applicable program or event distributor." (*Id.*) It is undisputed that the Flat Rock Saloon never obtained advance written permission to show the Fight from J & J. Therefore, the bar was not

"specifically authorized" to receive the cable transmission under Section 553. Accordingly, the Court will grant summary judgment to J & J on this claim.

### B. 47 U.S.C. § 605

J & J concedes that 47 U.S.C. § 605 does not apply to cable transmissions. (Pl.'s Br. in Opp'n to Def.'s Cross Motion for Summ. J. at 4 n.3 (citing *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001)).) Because it is undisputed that the Flat Rock Saloon received the Fight via cable transmission, the Court will grant summary judgment to TCOS on this claim.

### C. Conversion

TCOS argues that, if the Court finds both federal statutes inapplicable as a matter of law, it should decline to exercise supplemental jurisdiction over J & J's state-law conversion claim. (Def.'s Resp. & Cross-Mot. for Summ. J. at 7.) As J & J is entitled to summary judgment on its claim under 47 U.S.C. § 553, the Court will retain supplemental jurisdiction over its conversion claim as well.

## IV. CONCLUSION

The Court will grant summary judgment to J & J under 47 U.S.C. § 553 because the Flat Rock Saloon showed the Fight to its customers without authorization. The parties agree that 47 U.S.C. § 605 does not apply in this case, and the Court will grant summary judgment to TCOS on this claim. Finally, the Court will deny summary judgment to TCOS on the state-law conversion claim. An Order consistent with this Memorandum will be docketed separately.