## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **J & J SPORTS PRODUCTIONS, INC.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **TCOS ENTERPRISES, INC.,** | : | **No. 10-7130** |
| **Defendant.** | : | |

### MEMORANDUM

**Schiller, J.**                                                                                    **April 19, 2012**

On December 6, 2008, the Flat Rock Saloon in Philadelphia ordered a pay-per-view boxing match and displayed it to bar patrons. J & J Sports Productions, Inc. ("J & J"), which holds the commercial distribution rights to the fight, sued the owner of the bar, TCOS Enterprises, Inc. ("TCOS"), alleging violations of federal statutes prohibiting the unauthorized reception of cable and radio transmissions and a state-law conversion claim. The Court granted summary judgment to J & J on its claim under 47 U.S.C. § 553 and awarded statutory damages in the amount of $2,200. Currently before the Court is J & J's motion for attorneys' fees and costs. For the following reasons, the Court will award J & J attorneys' fees in the amount of $2,887.50 and costs in the amount of $363.24.

## I.      BACKGROUND

J & J holds the exclusive nationwide commercial distribution rights to *"The Dream Match"*: *Oscar De La Hoya v. Manny Pacquiao* (the "Fight"), which was broadcast on December 6, 2008. (Pl.'s Am. Mot. for Partial Summ. J. Attach. 6 [Gagliardi Aff.] ¶ 3.) In an effort to detect and prosecute piracy, J & J hires auditors to visit commercial establishments suspected of exhibiting

J & J's programming without authorization. (*Id.* ¶¶ 5-6.) On one such visit, a private investigator observed the Flat Rock Saloon showing the Fight on six television sets. (Pl.'s Am. Mot. for Partial Summ. J. Attach. 7 [Russeck Aff.].) J & J filed this action on December 3, 2010, alleging violations of 47 U.S.C. § 553 and 47 U.S.C. § 605 as well as a state-law conversion claim.

On January 13, 2012, the Court granted summary judgment to J & J on the claim under 47 U.S.C. § 553, which prohibits the unauthorized reception of cable transmissions, and granted summary judgment to TCOS on the claim under 47 U.S.C. § 605, which does not apply to cable transmissions. By Order dated March 8, 2012, the Court awarded $2,200 in statutory damages to J & J for the violation of § 553. J & J now seeks attorneys' fees in the amount of $11,325 and costs in the amount of $2,658.24.

II.    **DISCUSSION**

Under § 553, the court "may . . . direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2)(C). Thus, the award of attorneys' fees and costs is within the court's discretion. *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009-10 (2d Cir. 1993).

A.    **Attorneys' Fees**

"The lodestar method is '[t]he most useful starting point for determining the amount of a reasonable fee.'" *Gen. Instrument Corp. of Del.v. Nu-Tek Elecs. & Mfg., Inc.*, 197 F.3d 83, 91 (3d Cir. 1999) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).Under the lodestar method, the court "multiplies the number of hours reasonably expended by a reasonable hourly rate." *Comcast Cable Commc'ns v. Bowers*, Civ. A. No. 06-1664, 2007 WL 1557510, at *5 (D.N.J. May 25, 2007).

2

J & J requests a total of $11,325 in attorneys' fees based on 5.18 hours of work at an hourly rate of $450 performed by Thomas P. Riley, counsel of record in this case, as well as 24 hours of work at an hourly rate of $300 performed by an independent research attorney, 8.6 hours of work at an hourly rate of $150 performed by a paralegal, and 6.72 hours of work at an hourly rate of $75 performed by an administrative assistant. (Br. in Supp. of Pl.'s Mot. for Costs and Attys' Fees Ex. 1 [Reconstructed Time Records].)

As J & J notes, a judge within this District has found the requested rates for Riley, his paralegal, and his administrative assistant to be reasonable in a similar case. *See J & J Sports Prods., Inc. v. Thomas*, Civ. A. No. 10-7051, 2011 WL 3156765, at *3 (E.D. Pa. July 26, 2011). However, that case involved a default judgment, and a judge may "not decrease a fee award based on factors not raised at all by the adverse party." *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989). Here, Defendant objects to the reasonableness of Riley's rate because "a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community," and J & J "makes no reference to the prevailing market rates for representation in this type of action." (Br. of Def. in Opp'n to Pl.'s Mot. for Costs and Attys' Fees at 8-9.) This objection put J & J "on notice that it must defend its fee petition," *Bell*, 884 F.2d at 720, yet J & J chose not to address the issue of prevailing market rates in its reply brief. *See also Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) ("Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community."). "[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation"—in this case, Philadelphia—unless there is a need for "the special expertise of counsel from a distant district" or "local counsel are unwilling to handle the case." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (internal quotation

marks omitted). Because J & J has not argued that Riley possesses special expertise unavailable in Philadelphia or that local counsel are unwilling to handle this type of litigation, the Court finds that Philadelphia is the relevant community for setting the prevailing market rate.

In determining the prevailing market rate, a court must consider the rates charged "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Riley has over eighteen years of experience and specializes in civil prosecution of commercial signal piracy claims. (Br. in Supp. of Pl.'s Mot. for Costs and Attys' Fees Attach. 2 [Riley Decl.].) The Court will rely on the fee schedule established by Community Legal Services of Philadelphia, which the Third Circuit has approved for determining reasonable attorneys' fees. *See Maldonado*, 256 F.3d at 187. The fee schedule suggests an hourly rate of $305 to $350 for attorneys with sixteen to twenty years of experience. *See* Community Legal Services of Philadelphia Fee Schedule, *available at* http://www.clsphila.org. The Court will thus reduce Riley's hourly fee from $450 to $350 for the purpose of its lodestar calculation. Furthermore, J & J has made no effort to justify the $300 hourly rate for its unnamed independent research attorney, and the Court has no basis on which to determine whether such a rate is reasonable. Therefore, the Court will exclude from its lodestar calculation the hours charged by this attorney. *See DirecTV, Inc. v. Figler*, Civ. A. No. 04-0773, 2008 WL 382758, at *2 (W.D. Pa. Feb. 11, 2008) (excluding hours charged by attorneys due to the "complete lack of supporting evidence" for their rates).

Defendant also objects to J & J's request for fees attributable to "purely administrative activities." (Br. of Def. in Opp'n to Pl.'s Mot. for Costs and Attys' Fees at 8.) Interpreting another fee-shifting statute, the Supreme Court has indicated that recovery of separate fees for non-legal

4

work may be appropriate if that is the prevailing practice in the relevant market. *See Missouri v. Jenkins*, 491 U.S. 274, 287-88 (1989); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 849 n.19 (3d Cir. 1994). As J & J has not offered any evidence of the prevailing practice in Philadelphia, the Court will exclude from its lodestar calculation the hours billed for Riley's administrative assistant.

Plaintiff's counsel did not keep contemporaneous time records and instead "reconstructed" them "by way of a thorough review of the files themselves." (Pl.'s Mot. for Costs and Attys' Fees Attach. 2 [Riley Decl.] ¶ 6.) Although contemporaneous time records are preferable, "reconstructed time records have been held to be enough" in the Third Circuit, "provided that sufficient detail is present to allow defense counsel to attack specific items." *Strauss v. Springer*, 817 F. Supp. 1237, 1246 (E.D. Pa. 1993); *see also Rapp v. City of Easton*, 77 F. App'x 88, 90-91 (3d Cir. 2003); *Keenan v. City of Phila.*, 983 F.2d 459, 472-73 (3d Cir. 1992). However, in making the lodestar calculation, the court "should eliminate any hours that were not reasonably expended, such as hours that appear 'excessive, redundant, or otherwise unnecessary.'" *Comcast Cable Commc'ns*, 2007 WL 1557510, at *5  (quoting *Hensley*, 461 U.S. at 434).

In similar cases, courts have expressed reluctance to grant the full amount of attorneys' fees requested for seemingly boilerplate filings. *See, e.g.*, *J & J Sports Prods., Inc. v. Patton*, Civ. A. No. 10-40241, 2011 WL 5075828, at *5 (D. Mass. Oct. 25, 2011); *Kingvision Pay-Per-View, Ltd. v. Lardo*, Civ. A. No. 10-59, 2010 WL 3463316, at *5 (W.D. Pa. Sept. 1, 2010). The Court finds that certain filings in this case were of a boilerplate nature and do not warrant the hours attributed to them. In particular, the Court takes judicial notice of the fact that on December 3, 2010, the same day this action was filed, J & J filed no less than thirteen other actions in this District alone, with

5

complaints substantially similar to the one in this case. According to the reconstructed time records, Riley spent one hour on "Preparation, Filing, and Service of Initiating Suit Papers," in addition to two hours spent on the same task by Riley's administrative assistant. (Reconstructed Time Records.) To the extent that Riley's time was spent on administrative work, it is redundant and does not merit an hourly rate of $350. *See Jenkins*, 491 U.S. at 288 n.10 (noting that non-legal work should not be billed at the same rate as legal work, even if performed by a lawyer). To the extent that Riley's time was spent on legal work, the Court finds it to be unreasonably expended and will reduce it to 0.25 hours. *See Patton*, 2011 WL 5075828, at *5 ("One would expect that the first case that was investigated, researched, and filed would bear the most significant legal expenses, and that each succeeding case would involve substantially less effort by the attorneys."). Likewise, billing seven hours for a paralegal to prepare Riley's seven-paragraph declaration in support of this motion strikes the Court as excessive. (*See* Reconstructed Time Records.) The Court will reduce the time spent on this task to one hour.

Accordingly, the Court will award fees as follows: 4.43 hours for Riley at an hourly rate of $350 and 2.6 hours for Riley's paralegal at an hourly rate of $150. The lodestar calculation is thus $1940.50.

### B.    Costs

J & J also seeks $2,658.24 in costs, including $475 for investigative expenses, the $350 filing fee, $560 for service of process, $13.24 in courier charges, and $1260 in "Appearance Attorney's Fees." TCOS argues that $475 in investigative expenses is unreasonable because J & J's private investigator was at the Flat Rock Saloon for only ten minutes. (*See* Russeck Aff.) TCOS also argues that $560 is an excessive charge for service of process and that J & J has failed to support the

requested Appearance Attorney's Fees. While the Court recognizes that reimbursement for such costs may be appropriate, J & J cannot recover them without any explanation or documentation. *See Joe Hand Promotions, Inc. v. Be*, Civ. A No. 11-1333, 2011 WL 5105375, at *6 (N.D. Cal. Oct. 26, 2011) ("Without clearer evidence supporting Plaintiff's allegations of recoverable costs, the Court will only allow reimbursement for the $350 complaint filing fee."). Therefore, the Court will award only the $350 filing fee and $13.24 in courier charges, to which Defendant does not object, for a total of $363.24 in costs.

## III.   CONCLUSION

For the reasons set forth above, the Court will award J & J attorneys' fees in the amount of $1940.50 and costs in the amount of $363.24. An Order consistent with this Memorandum will be docketed separately.